IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG-D CONSTRUCTION CORP. - CALIFORNIA, <br><br>    Plaintiff, <br><br>    vs. <br><br>RSCO, INC., et al., <br><br>    Defendant. | No. CV-F-05-435 REC/LJO <br><br> ORDER GRANTING BIG-D'S MOTION TO REMAND AND REMANDING ACTION TO THE TULARE COUNTY SUPERIOR COURT |

On July 11, 2005, the court heard the Motion to Remand filed by Big-D Construction Corp. - California (hereinafter referred to as Big D).

Upon due consideration of the record and the arguments of the parties, the court grants the motion to remand and remands this action to the Tulare County Superior Court for the reasons set forth herein..

On October 29, 2004, Big-D Construction Corp. - California (hereinafter referred to as Big D) filed a "Complaint for Breach

1

1 of Written Contract; Action Against Mechanics' Lien Release Bond;
2 and For Declaratory Relief" in the Tulare County Superior Court.
3 Named as defendants are (1) RSCO, Inc. dba Rising Sun Company,
4 alleged to be a California corporation doing business in
5 California (hereinafter referred to as Rising Sun); (2)
6 Accredited Surety and Casualty Company, Inc., alleged to be a
7 Florida Corporation transacting surety business in California
8 (hereinafter referred to as ASCC); (3) Leprino Foods Company,
9 alleged to be a Colorado corporation doing business in California
10 and alleged to be the owner of the property on which the Project
11 described in the Complaint is being constructed (hereinafter
12 referred to as Leprino); and (4) Does 1-100.  The First Cause of
13 Action is for breach of written contract against Rising Sun and
14 Does 1-50 and alleges in pertinent part:

> 9.  On ... September 1, 2000, Defendant LEPRINO, as the owner, and Plaintiff, as the general contractor, entered into a written prime contract, Contract Agreement No. 3357 (hereinafter referred to as the 'Prime Contract') for the construction of a work of improvement consisting of an approximately 475,000 gross square foot new dairy and related products (including cheese and whey products) manufacturing, processing and storage facility to be known as the 'LeMoore-West plant' (hereinafter referred to as the 'Project') located at the Property.
>
> 10.  On ... February 12, 2001, Plaintiff entered into a subcontract agreement with Defendant RISING SUN (hereinafter the 'Subcontract') to perform a portion of the Project consisting generally of the installation of Concrete Footings and Foundations.
>
> 11.  Plaintiff also entered into other

          subcontract agreements with DOES 1 through 50 to perform other various portions of the Project (hereinafter the 'DOE Agreements').

          12.  Pursuant to the terms of the Subcontract, RISING SUN was obligated to perform its scope of work in a timely manner and to coordinate its work with all of the Project's other subcontractors to ensure the uninterrupted progress of the Project and to enable Plaintiff, in its role as general contractor, to complete the Project as scheduled.

          13.  Pursuant to the terms of the DOE Agreements, DOES 1 through 50 ... were obligated to perform their respective scopes of work in a timely manner and to coordinate their work with the Project's other subcontractors to ensure the uninterrupted progress of the Project and to enable BIG-D to complete the Project as scheduled.

          14.  Plaintiff is informed and believes, and on that basis alleges, that RISING SUN and DOES 1 through 50 ... breached the terms of their respective subcontract agreements by failing to complete their work in a timely fashion and adequately coordinating their work among themselves.

          15.  As a result of RISING SUN's and DOES 1 through 50's ... breaches, Plaintiff has been damaged in that these Defendants' failures caused at least several days of delay to the overall completion of the Project resulting in Plaintiff incurring, and continuing to incur, substantial damages in an amount to be later ascertained but which exceeds $25,000.00.

Big-D prays for damages against Rising Sun in an amount which exceeds $25,000. The Second Cause of Action is against ASCC as surety and Leprino as principal for action against mechanics' lien release bond. After realleging the preceding allegations, the Second Cause of Action alleges that plaintiff fully performed

1 the Prime Contract and

2   18. After Plaintiff ceased furnishing labor, services, materials, and equipment to the Project, Plaintiff duly recorded on June 24, 2003, its Mechanics' Lien in the amount of $10,185,025.43 in the Kings County Recorder's Office as Document No. 0316560 to secure payment of the Prime Contract balance owed. This claim of lien was timely recorded pursuant to Civil Code § 3116.

  19. In the Mechanics' Lien, Plaintiff claimed a lien on the work of improvement and real property in the amount which it believed, at the time that said Mechanics' Line was recorded, to equal the reasonable value for all labor, materials, services, and/or equipment Plaintiff had furnished for the Project for which it had not been paid.

  20. Subsequent to recording its Mechanics' Lien, Plaintiff has recorded several partial mechanics' lien releases, to reflect payments made by LEPRINO, as owner, to various Project Subcontractors. These partial lien releases reduced the amount of the Mechanics' Lien to $6,503,037.70.

  21. In October, 2003, Plaintiff brought suit against LEPRINO and various subcontractors in California Superior Court for the County of Kings for breach of contract and to foreclose its mechanics' lien. LEPRINO removed this action to the United States District Court for the Eastern District of California, Case No. CIV.F-03-6354 REC LJO, based upon diversity jurisdiction grounds. From there, LEPRINO brought a motion to dismiss it from the action, claiming that, pursuant to a forum selection clause contained in the Prime Contract, BIG-D had agreed to litigate all disputes stemming from the Prime Contract in Colorado. The Eastern District granted LEPRINO's motion to dismiss with one caveat: LEPRINO was required to post a mechanics' lien release bond with the Eastern District.

  22. Plaintiff is informed and believes, and thereon alleges, that on ... April 29, 2004, LEPRINO, as principal, and ASCC and DOES 51

4

> through 70 ... as sureties, duly made and executed a Mechanics' Lien Release Bond, No. 10020440 in the amount of $9,755,000.000 [sic], so as to enable the Property to be freed from the effect of Plaintiff's claim of lien and any action to foreclose said lien.
>
> 23.  Plaintiff is informed and believes, and thereon alleges, that the mechanics' lien release bond was posted with the United States District Court for the Eastern District of California, per the District Court of Fresno's order.  Plaintiff is further informed and believes, and on that basis alleges that this Mechanics' Lien Release Bond was made, issued and executed as aforesaid in accordance with §3143 of the Civil Code of the State of California.

Big-D prays for damages against ASCC and Leprino in an amount in excess of $6,503,037.70 plus interest at the rate of 10% per annum.  The Third Cause of Action is for declaratory relief against Rising Sun and Does 1-50.  After realleging the preceding allegations, the Third Cause of Action alleges:

> 25.  Pursuant to Section 3.8 [Duty to Indemnify and Hold Harmless] of the Subcontract and DOE Agreements, Defendant RISING SUN and DOES 1 through 50 ... expressly agreed to indemnify, defend and hold harmless BIG-D from any and all claims, damages, liability, expenses and attorneys fees arising out of the performance of, or failure to perform, their respective works on the Project.
>
> 26.  BIG-D has performed all the conditions and obligations to be performed on its part under the terms of the Subcontract and DOE Agreements ....
>
> 27.  LEPRINO has filed suit against BIG-D in the United States District Court for the District of Colorado, Case No. 03-mk-2669 (PAC) for damages stemming from Project delays (the 'LEPRINO' Action).  Additionally, University Marelich Mechanical (hereinafter

5

        'UMM') and BIG-D remain parties to the Eastern District of California action, Case No. CIV.F-03-6354 REC LJO.  UMM, which performed the Projects [sic] mechanical engineering installations, has sued BIG-D for, among other things, damages it claims to have sustained as a result of the Project delays (the 'UMM Action').

        28.  An actual controversy has now arisen between BIG-D and RISING SUN on the one hand and BIG-D and DOES 1 through 50 ... on the other, concerning their rights and duties under the Subcontract and DOE Agreements, respectively.  Specifically, BIG-D contends and RISING SUN and DOES 1 through 50 ... dispute, that, if BIG-D is adjudged to have delayed the Project in either the LEPRINO Action or the UMM Action, then to the extent that RISING SUN and DOES 1 through 50 ... are found to have actually caused all or a portion of the Project delays, then RISING SUN and DOES 1 through 50 ... shall indemnify BIG-D proportionally for attorneys fees and costs incurred in defending both the LEPRINO and UMM Actions as well as for the proportionate amounts of any judgment entered against BIG-D in the LEPRINO and/or UMM Actions.

        29.  Plaintiff therefore desires a judicial determination as to what extent or proportion RISING SUN and DOES 1 through 50 are obligated to indemnify BID-D for any of its attorneys fees and costs incurred in defending both the Leprino [sic] and UMM Actions and for any judgments entered against BIG-D in the LEPRINO and/or UMM Actions.

        30.  Such a declaration is necessary and appropriate at this time in order that BIG-D, RISING SUN, and DOES 1 through 50 ... may ascertain their rights and duties under their respective subcontract agreements.

On March 30, 2005, Leprino and ASCC filed a Notice of Removal of this action.  The removal was joined by Rising Sun on the same date.  The Notice of Removal asserts in pertinent part:

> 2. The first date upon which defendant LEPRINO FOODS COMPANY ('LFC') received a copy of the complaint was on LFC on March 24, 2005. It was improperly served by mail at that time on counsel for LFC. It was served thereafter on defendants [sic] ACCREDITED.
>
> 3. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs as alleged in the Complaint.
>
> 4. Defendant is informed and believes that plaintiff BIG-D CONSTRUCTION CORP. - CALIFORNIA, a Utah corporation, was, and still is, a resident of the State of Utah. Defendant LFC is informed and believes co-defendant RSCO, INC. dba RISING SUN COMPANY, a California corporation was, and still is, a resident of the State of California. Defendant LFC is informed and believes co-defendant ACCREDITED SURETY AND CASUALTY COMPANY, INC., a Florida corporation was, and still is, a resident of the State of Florida. Defendant LEPRINO FOODS COMPANY was, and still is, a resident of the State of Colorado.
>
> 5. LFC is informed and believes that all other defendants who have been served with Summons and Complaint have joined in this Notice of Removal ... LFC also is informed and believes BIG D [sic] delayed service on LFC and ACCREDITED and joined RSCO INC. as a sham defendant in order to avoid this removal.

**A.  Background.**

In <u>Big-D Construction Corp. - California v. Leprino Foods Company, et al.</u>, No. CV-F-03-6354 REC/LJO, Big-D filed a Complaint against Leprino and numerous subcontractors. The

7

Complaint did not name Rising Sun and leave to amend has not been sought to include Rising Sun even though the Complaint named Doe Defendants. The Complaint seeks a declaratory judgment concerning indemnification rights between Big-D, Leprino, UMM and other subcontractors, alleges a claim for damages against Leprino for breach of the Prime Contract, alleges a claim for foreclosure of mechanics' liens, and alleges claims for quatum meruit and indebtitatus assumpsit, statutory penalties and attorneys' fees against Leprino. By Order filed on January 22, 2004, the court granted Leprino's Motion to Dismiss Complaint for Improper Venue and dismissed the action as against Leprino subject to the posting of a bond to secure the priority of Big-D's mechanics' lien. In so ruling, the court relied on the following provision in the Prime Contract between Big-D and Leprino:

> 15.8 <u>Colorado Law</u>. The Contract shall be governed by and construed in accordance with the laws of the State of Colorado. Further, the parties expressly consent to the exclusive (subject to the terms of this paragraph 15.8) jurisdiction and venue in the Federal courts for the District of Colorado or the State courts of the Second Judicial District of Denver, Colorado. Accordingly, any action or proceeding brought by either party which is based on, or derives from, this Agreement will be brought in such courts. Notwithstanding the foregoing, if jurisdiction in such courts cannot be obtained with respect to an indispensable party to such an action, the Owner and Contractor agree that the forum for such action will be in the state where jurisdiction is proper as to all indispensable parties.

In enforcing the forum selection clause in favor of Leprino, the

1 court rejected Big-D's arguments that Leprino had waived
2 enforcement of the forum selection clause, that the
3 subcontractors named in the action are indispensable parties,
4 that the forum selection clause should not be enforced because
5 litigation in Colorado is not convenient under 28 U.S.C. §
6 1404(a), that the "local action doctrine" requires that the
7 action against Leprino be heard in California notwithstanding the
8 forum selection clause, and that the forum selection clause
9 should not be enforced because enforcement will contravene
10 California's public policy.  After Leprino posted the required
11 bond and after motions concerning the entry of judgment and
12 allowance of an immediate appeal, the court entered judgment for
13 Leprino pursuant to Rule 54(b), Federal Rules of Civil Procedure,
14 thereby allowing an immediate appeal to the Ninth Circuit.

15      **B.   <u>Motion to Remand</u>**.

16      In a motion to remand to state court, the party asserting
17 federal jurisdiction has the burden of proof.  "The burden of
18 establishing federal jurisdiction is upon the party seeking
19 removal, and the removal statute is strictly construed against
20 removal jurisdiction."  <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d
21 1190, 1195 (9th Cir. 1988).  "The strong presumption against
22 removal jurisdiction means that the defendant always has the
23 burden of establishing that removal is proper."  <u>Gaus v. Miles,
24 Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

25           1.   <u>Lack of Complete Diversity</u>.

26      Big-D moves to remand this action because Rising Sun is

alleged in the Complaint to be a California corporation doing business in California.

The district courts have original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  28 U.S.C. § 1331(a)(1).  Section 1331(c)(1) provides in pertinent part:

> (c) For the purposes of this section and section 1441 of this title -
>
> (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ....

28 U.S.C. § 1441(b) provides in pertinent part that any action based on diversity of citizenship "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  As explained in Wright, Miller & Cooper, 14B <u>Federal Practice and Procedure</u>, § 3723, pp. 564-568 (1998):

> Despite the applicability of the general rules governing diversity of citizenship jurisdiction to cases removed to federal court, removal jurisdiction over diversity actions is more limited that jurisdiction over diversity of citizenship cases originally brought in federal court.  This is because Section 1441(b) explicitly provides, and the cases uniformly hold, that removal to federal court based on diversity of citizenship is available only if <u>none</u> of the parties in interest properly joined and served as a defendant is a citizen of the state in which the action is brought; that limitation is not to the removal of federal question cases or the federal courts'

10

> original subject matter jurisdiction over diversity cases.

The requirement of Section 1441(b) is commonly called the "no local defendant" rule.

Defendants argue that remand on this ground should be denied because Rising Sun is sham defendant fraudulently joined as a defendant in the Complaint for the purpose of avoiding removal.

In so arguing, defendants refer the court to Triggs v. John Crump Toyota, Inc., 154 F.3d 1284 (11th Cir. 1998).  In Triggs, the Eleventh Circuit noted that fraudulent joinder, a judicially created doctrine that provides an exception to the requirement of complete diversity, has been found in two situations, first, when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant, and, second, where there is outright fraud in the plaintiff's pleading of jurisdictional facts. Id. at 1287.  Triggs cites Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), as authority for a third situation in which fraudulent joinder has been found: "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. Id.

In Tapscott, a putative class action was removed to a district court.  There were numerous classes of defendants, all

11

of whom were joined under Federal Rule 20.  <u>Tapscott</u> held in pertinent part:

> The joinder of defendants in this action has been accomplished solely through Rule 20. The district court, finding no allegation of joint liability between Lowe's and any other defendant and no allegation of conspiracy, held there was an 'improper and fraudulent joinder, bordering on a sham.'  The court rejected Appellants' argument that 'a mere allegation of a common business practice subjects all defendants to joinder.' ... Disregarding the citizenship of the improperly joined parties, the district court asserted jurisdiction and severed and remanded the remainder of the action to state court.
>
> It is important to note that Appellants have not contended that Lowe's was properly joined with any other non-diverse defendants. Rather, they contend that while a court may disregard the citizenship of fraudulently joined parties, a misjoinder, no matter how egregious, is not fraudulent joinder.  We disagree.
>
> Joinder of the defendants under Rule 20 requires: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact ... The district court correctly found no allegation of joint liability or any allegation of conspiracy.  Further, the alleged transactions involved in the 'automobile' class are wholly distinct from the alleged transactions in the 'merchant' class.  The only similarity between the allegations in the 'automobile' class and the 'merchant' class are allegations of violations of Alabama Code §§ 5-19-1, 5-19-19, and 5-19-20.  Such commonality on its face is insufficient for joinder.
>
> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of

|   |   |
|---|---|
| 1 | action.  A defendant's 'right of removal |
| 2 | cannot be defeated by a fraudulent joinder of a resident defendant having no real |
| 3 | connection with the controversy.' ... Although certain putative class |
| 4 | representatives may have colorable claims against resident defendants in the putative |
| 5 | 'automobile' class, these resident defendants have no real connection with the controversy |
| 6 | involving Appellants Davis and West and Appellee Lowe's in the putative 'merchant' |
| 7 | class action.  We hold that the district court did not err in finding an attempt to |
| 8 | defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder |
| 9 | is fraudulent joinder, but we do agree with the district court that Appellants' attempt |
| 10 | to join these parties is so egregious as to constitute fraudulent joinder. |

Tapscott, 77 F.3d at 1360.

Defendants that the court should follow Tapscott in resolving this motion:

> There is no contractual relationship between Leprino, the owner, and Rising Sun, the subcontractor.  There is no potential claim between those parties.  The indemnity action does not even accrue until and unless there is a judgment by Leprino against Big-D and Big-D pays money.  This court has already determined that the indemnity theory does not create an indispensable party.  The timing of service was the first suggestion that Big-D was attempting to use Rising Sun to have the state court review the forum selection clause already ruled upon by Judge Coyle.  Counsel for Big-D, Dan Nevis, claims it [sic] filed the action against Leprino in October (presumably with a good faith belief in the merits), but it waited for 5 months to serve the complaint because it could not determine if the bond was recorded.  A search of the county records takes a day, not 5 months.
>
> Nevis then argues Rising Sun was not named in the original action where it named approximately 18 subcontractor defendants because it did not know if indemnity would be

13

> needed. However, Big-D argued extensively about its right to indemnity in opposition to Leprino's motion to dismiss. Big-D was aware of Leprino's potential claim. Counsel for Rising Sun notes he asked Big-D's counsel for the reasons his client was named in this action. He served form interrogatories and received no response, and to date, was not told how his client allegedly breached a subcontract. There will never be an action between Rising Sun and Leprino due to the lack of privity of contract. Any indemnity claim will not accrue, if at all, until after a judgment by Leprino against Big-D. The failure to name Rising Sun originally, the timing of the present action, the delayed service of the present action, naming essentially a nominal defendant first, all suggest Rising Sun is a sham defendant.

The Eleventh Circuit's articulation of a third basis for a finding of fraudulent joinder has not been adopted by the Ninth Circuit or discussed by the Ninth Circuit in a published decision.[1] Furthermore, it has not been adopted by any other Courts of Appeal other than possibly the Fifth Circuit. See In re: Benjamin Moore & Co., 318 F.3d 626, 630-631 (5th Cir. 2002)("[W]ithout detracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its

---

[1] An unpublished decision by the Ninth Circuit discussed the fraudulent joinder articulated in Tapscott. See California Dump Truck Owners Association v. Cummins Engine Company, Inc., 2001 WL 1563913 (2001). However, this case cannot stand as authority that the Ninth Circuit will follow Tapscott because the decision is unpublished and because the decision expressly states that "[f]or purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs."

14

application in this case.")  The Tapscott rationale, called "procedural misjoinder" or "fraudulent misjoinder" has been criticized.  See Osborn v. Metropolitan Life Insurance Comany, 341 F.Supp.2d 1123 (E.D.Cal. 2004):

> Professors Wright, Miller, and Cooper have characterized the Tapscott 'fraudulent misjoinder' theory as a 'new concept' that 'appears to be part of the doctrine of fraudulent joinder.'  Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723 at 656.  They observe that the doctrine adds to the complexity of a federal court's decision as to removal, and note that even in the Eleventh Circuit not all procedural misjoinder rises to the level of fraudulent joinder.  They posit that 'numerous additional decisions will be needed to clarify' the distinction between which misjoinder claims rise to the level of 'egregiousness' justifying a refusal to remand ... They further suggest that an aggrieved defendant could avoid the confusion and complexity created by this standard by seeking relief from the misjoinder in state court and then removing to federal court ....
>
> My own judgment is that the last thing the federal courts need is more procedural complexity.  I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.
>
> Moreover, application of Tapscott raises other unnecessary difficulties.  Since the decision, those following it have questioned how to apply the doctrine and whether, when considering the joinder of parties, a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state law counterpart.  In some cases, where the federal rule of procedure on joinder tracks the corresponding state rule, the question would not have a practical import.  In states such as California, however, the state's rule

15

>       permitting joinder is broader than the
>       federal rule.
>
>       In sum, because there appears to be no reason
>       to develop a fraudulent misjoinder theory,
>       and because of the uncertainty as to how such
>       a theory should be applied, I respectfully
>       decline to apply it. This conclusion is
>       supported by the well-recognized doctrine
>       that a removing party bears a heavy burden of
>       persuasion and that if there is any doubt as
>       to whether removal was proper, remand is
>       required.

341 F.Supp.2d at 1127-1128.  See also Brazina, M.D. v. Paul Revere Life Insurance Company, 271 F.Supp.2d 1163 (N.D.Cal. 2003):

>       Defendants argue vociferously that Brazina's
>       claims against the DOI are completely
>       unrelated to his claims against defendants,
>       and thus Brazina does not meet the
>       requirements for permissive joinder under
>       Rule 20. Defendants try to bootstrap this
>       unconvincing argument into a fraudulent
>       joinder claim. Essentially, they allege that
>       DOI and defendants are not jointly,
>       severally, or alternatively liable to
>       Brazina, liability does not arise from the
>       same transaction or occurrence, and there is
>       no 'common question of law or fact' between
>       the claims, and thus this court should find
>       fraudulent joinder.
>
>       Defendants seem to be relying on the theory
>       that emerged from Tapscott ... in which the
>       Eleventh Circuit ruled that claims could be
>       considered fraudulently joined when they are
>       misjoined ... However, Tapscott concerned two
>       groups of plaintiffs that sued separate
>       groups of defendants on almost entirely
>       separate legal grounds ... The Tapscott court
>       found joinder of these two groups of
>       plaintiffs, which was accomplished through
>       Rule 20, 'so egregious as to constitute
>       fraudulent joinder.' ... The Ninth Circuit
>       has not found occasion to address Tapscott
>       and no other circuit has adopted its
>       rationale.

16

> In the action at bar, one plaintiff brought different causes of action against separate defendants without resort to Rule 20. Even if this court were to extend <u>Tapscott</u> to such an action, there is no evidence that the claims are so unrelated as to constitute 'egregious' misjoinder. ....

271 F.Supp.2d at 1171-1172.

The court follows the weight of authority and declines to adopt the <u>Tapscott</u> standard as a basis for defeating a motion to remand based on incomplete diversity. As the cases have noted, <u>Tapscott</u> involved unique facts and limited the standard set forth in the case to egregious circumstances, a standard difficult to apply. As noted by the district court in <u>Osborn</u>, defendants could seek dismissal of the allegedly misjoined defendant in state court and then seek removal to the federal court. This is the better practice given the standard applicable in the Ninth Circuit for determining fraudulent joinder for purposes of removal jurisdiction. <u>See</u> <u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313, 1318 (9th Cir.), <u>cert. denied</u>, 525 U.S. 963 (1998):

> It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds ... But, '[f]raudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.' ... In deciding whether a cause of action is stated we have declared that we will 'look only to a plaintiff's pleadings to determine removability.' ... And, we have commented that we will determine the 'existence of federal jurisdiction ... solely by an examination of the plaintiff's case, without recourse to the defendant's pleadings.' At least that is true when there

17

>has not been a fraudulent joinder ... Where fraudulent joinder is an issue, we will go somewhat further. 'The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'
>
>The approach is reasonable and necessary. For example, a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory.

There is no question that Big-D has alleged a viable claim against Rising Sun for breach of contract based on untimely performance as a subcontractor, as well as for declaratory relief on an indemnity theory arising out of the Colorado and existing federal actions.

With regard to defendants' contention that Rising Sun is fraudulently joined in an effort by Big-D to avoid the prior venue determination made by this court, an action is not removable simply because it involves claims related to or even parallel to those already filed or dismissed in federal court. See Rivet v. Regions Bank of La., 522 U.S. 479, 476 (1998), or because removal is appropriate or necessary to protect a prior federal court ruling. See Syngenta Crop Protection v. Henson, 537 U.S. 28, 34 (2002).

Consequently, the court concludes that removal of this action was improper because of the absence of complete diversity.[2]

---

[2] Because of this conclusion, the court does not address the other grounds for remand argued by Big-D.
 Defendants' argument that Big-D has waived the lack of

ACCORDINGLY:

1.  Big-D's Motion to Remand is granted.

2.  This action is remanded to the Tulare County Superior Court.

IT IS SO ORDERED.

**Dated: August 15, 2005**              /s/ Robert E. Coyle
668554                                  UNITED STATES DISTRICT JUDGE

---

diversity "when this court already assumed diversity jurisdiction in the matter between these parties" in No. CV-F-03-6354 REC/LJO. The fact that diversity of citizenship was not contested in another action does not allow imposition of federal subject matter jurisdiction.  Subject matter jurisdiction cannot be waived or stipulated to by the parties.

19